**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID E. TRUMP, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NORTHAMPTON COUNTY SHERIFF'S | : | DOCKET NO. 5:21-CV-897-EGS |
| OFFICE, ET AL., | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2021, upon consideration of

Defendants', Northampton County Sheriff's Office and Northampton County ("Moving

Defendants") Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P.

12(b)(6), and any response thereto, it is hereby ORDERED and DECREED that Moving

Defendants' Motion is GRANTED.  The claims against Defendants Northampton County

Sheriff's Office and Northampton County contained in Plaintiff's Amended Complaint are

dismissed with prejudice.


**BY THE COURT:**


_____
Honorable Edward G. Smith, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID E. TRUMP, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NORTHAMPTON COUNTY SHERIFF'S | : | DOCKET NO. 5:21-CV-897-EGS |
| OFFICE, ET AL., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS', NORTHAMPTON COUNTY SHERIFF'S OFFICE AND
NORTHAMPTON COUNTY, MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT**

Defendants, Northampton County Sheriff's Office and Northampton County ("Moving Defendants"), by and through their counsel, MacMain, Connell & Leinhauser, LLC, respectfully request that This Honorable Court dismiss with prejudice all claims against Moving Defendants in Plaintiff's Amended Complaint (ECF Doc. No. 8) pursuant to Fed R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

The Memorandum of Law in Support of Moving Defendants' Motion to Dismiss is incorporated by reference as if fully set forth herein and attached hereto.

Respectfully submitted,

**MacMAIN, CONNELL &
LEINHAUSER, LLC**

Dated: June 2, 2021          By:     */s/ David J. MacMain*
                                    David J. MacMain, Esquire
                                    Andrew J. Davis, Esquire
                                    Attorney I.D. Nos. 59320/316460
                                    433 W. Market Street, Suite 200
                                    West Chester, PA 19382
                                    *Attorneys for Defendants Northampton
                                    County Sheriff's Office and Northampton
                                    County*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID E. TRUMP, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NORTHAMPTON COUNTY SHERIFF'S | : | DOCKET NO. 5:21-CV-897-EGS |
| OFFICE, ET AL., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS', NORTHAMPTON
COUNTY SHERIFF'S OFFICE AND NORTHAMPTON COUNTY, MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendants, Northampton County Sheriff's Office and Northampton County (collectively the "County Defendants" or "Moving Defendants"), by and through their counsel, MacMain, Connell & Leinhauser, LLC, respectfully request that This Honorable Court dismiss all claims asserted against them in Plaintiff's Amended Complaint (ECF Doc. No. 8) pursuant to Fed. R. Civ. P. 12(b)(6) as Plaintiff still has failed to state a viable claim upon which relief can be granted.

Plaintiff Inmate David E. Trump, who is currently incarcerated at SCI-Phoenix, brings the present action for injuries that he sustained when he fell while exiting from the back of Northampton County Sheriff's Office transportation van. As more fully set forth herein, both of Plaintiffs §1983 Federal claims – State-Created-Danger/Deliberate Indifference (Count I) and *Monell* (Count II) fail as a matter of law and should be dismissed as to the County Defendants. Likewise, both of the state tort claims – "Negligence, Carelessness and Recklessness" (Count III), and "Intentional Conduct" (Count IV) fail as a matter of law and are barred by the

1

Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S.A. §8541 et seq. ("Tort Claims Act").

## I.  SUMMARY OF ALLEGED FACTS AND PROCEDURAL HISTORY

The operative facts of this incident, which are very simple and captured on a SCI-Phoenix video camera recording (previously submitted as "Exhibit A" to ECF Doc. No. 6, and incorporated by reference hereto as "*Exhibit A*"), are that on March 20, 2019, Plaintiff was an inmate passenger in a Northampton County Sheriff's van in transit from the Northampton County Courthouse to State Correctional Institution Phoenix ("SCI Phoenix"), located in Skippack, Montgomery County, Pennsylvania.  *See*, ECF Doc. No. 8 at ¶ 14.  Upon arrival at the sally port of SCI Phoenix, two sheriff's deputies opened the back door of the van, and walked away from the area while the transported inmates, including Plaintiff, exited the van.  As seen on the video, two other inmates exited the van ahead of Plaintiff with no difficulty or the need of assistance. Thereafter, Plaintiff attempted to exit the van, and during his descent, fell off of the back of the van and onto the floor of the sally port.  *Id*. at ¶ 21.  At the time Plaintiff fell from the van, his hands were cuffed, attached to a waistbelt, and his feet were shackled, given his status as an inmate passenger (as were the other two inmates).  *Id*.  At the time of the fall, the "John Doe 1" Sheriff's Deputy and Deputy Greenawalt were away from the van and not touching or manipulating Plaintiff's movement.  *Id*. at ¶¶ 14-21.

On February 17, 2021, Plaintiff initiated the instant action by filing an original Complaint.  *See*, ECF Doc. No. 1.  In his original Complaint, Plaintiff asserted the following four (4) claims against "All Defendants":

Count I – §1983 – State-Created-Danger/Deliberate Indifference

Count II – §1983 – *Monell*

Count III – State Law Claims – Negligence, Carelessness and Recklessness

Count IV – State Law Claims – Intentional Conduct

Moving Defendants filed their Motion to Dismiss Plaintiff's Complaint (ECF Doc. No. 6) on May 4, 2021, and in response, Plaintiff filed his Amended Complaint (ECF Doc. No. 8) on May 19, 2021, in an attempt to correct the legal and factual defects in the original Complaint. Plaintiff's Amended Complaint asserts the same four (4) claims against Moving Defendants, but attempts to incorporate additional factual basis for the claims.  Plaintiff's Amended Complaint also now names Deputy Sheriff Jeffrey Greenawalt as the John Doe 2 Northampton County Sheriff's Deputy originally identified in Plaintiff's Complaint.  As discussed in further detail below, Plaintiff's Amended Complaint fails to remedy the factual and legal defects, and all claims asserted against Moving Defendants must be dismissed as a matter of law.

II.    **STATEMENT OF QUESTIONS PRESENTED**

      a.  **Do Plaintiff's Federal §1983 Claims Fail As A Matter Of Law?**

      Suggested Answer: Yes.

      b.  **Do Plaintiff's State Law Claims Fail As A Matter Of Law As Barred By The Tort Claims Act?**

      Suggested Answer: Yes.

III.    **STANDARD OF REVIEW**

"In considering a motion to dismiss pursuant to Rule 12(b)(6), courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *State Coll. Area Sch. Dist. v. Royal Bank of Can.*, 825 F. Supp. 2d 573, 577-78 (M.D. Pa. 2011) (internal citations and quotation marks omitted).  Rule 12(b)(6) of the Fed. R. Civ. P. provides for the dismissal of complaints which fail to state a claim upon which relief can be

granted.  Rule 12(b)(6) requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The testing of the sufficiency of a complaint requires the court to conduct a three-step inquiry.  *Santiago v. Warminster Township*, 629 F.3d 121, 130-21 (3d Cir. 2010).  In the first step, "the court must take note of the elements a plaintiff must plead to state a claim." *Id.* quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. *Id.* at 131; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the Court isolates the well-pleaded factual allegations, it must turn to whether they are sufficient to show a "plausible claim for relief." *Twombly*, 550 U.S. at 556, *Iqbal*, 556 U.S. at 679.  A claim is facially plausible when the plaintiff pleads facts "that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Generally a court's inquiry is limited to the facts stated in the complaint.  *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  However, a district court may also rely on attached exhibits such as those that are a matter of public record.  *Id.*  Courts may also consider documents that are "central to the claim and [are] attached to or incorporated by reference into the complaint" as those may not be considered outside of the pleadings.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).  Even when a document is not incorporated by reference, the court may nevertheless consider it where the

complaint 'relies heavily upon its terms and effect', thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC*, 622 F.3d at 111, (*quoting*, *Mangifico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (*quoting*, *Chambers v. Time Warner, Inc*., 282 F.3d at 152-53)).

IV.   **ARGUMENT**

A.   **THE FEDERAL §1983 CLAIMS FAIL AS A MATTER OF LAW**

As more fully set forth herein, although Count I is asserted against "All Defendants" – meaning both County Defendants and individual defendants Deputy Greenawalt and "John Doe 1" - it is really only arguably applicable to the individual Defendants, and not the County, as there is no *respondeat superior* liability for a municipal entity for the acts of its officers such as here. *Monell v. Department of Social Servs. of the City of New York*, 436 U.S. 658, 691 (1978). However, the derivative §1983 *Monell* claim as asserted in Count II necessarily requires satisfaction of three elements, the first of which requires that a municipal officer violated an individual's constitutional rights.  Thus, it is logical to begin the present legal argument with a discussion of whether there is a viable constitutional claim in the first instance against the now-named Northampton County Deputy Sheriff Jeffrey Greenawalt or the "John Doe 1" officer named in Plaintiff's Amended Complaint.

The Supreme Court established that municipalities may be liable for a constitutional violation under 42 U.S.C. § 1983 where "execution of a government's policy of custom, whether made by its lawmakers or by those whose edicts or act may fairly be said to represent official policy, inflicts injury". *Monell*, 436 U.S. 658 (1978).  "That is, a municipality is subject to §1983 liability to the extent it maintained an unconstitutional custom or policy that caused the constitutional violations alleged by the claimant, but is not liable for injuries on the sole basis

that they were inflicted by its employees." *Thomas v. Harrisburg City Police Dep't,* 2021 U.S. Dist. LEXIS 32938 *22-*23 (M.D. Pa. Feb. 23, 2021)(Kane, J.)(citing, *Monell*, 436 U.S. at 694).

More simply, and applied to this case, in order for the County Defendants to be liable under the derivative *Monell* claim (Count II), Plaintiff has to establish three things:

> (1) an underlying constitutional violation – in this case – a "state-created-danger" as alleged in Count I;
>
> (2) the identity of the officials or governmental bodies with final policymaking authority; and
>
> (3) proof that those individuals "have, through their decisions," caused the deprivation of rights at issue by policies which affirmatively command that it occur or by acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity.'"

*Simmons v. City of Phila.*, 947 F.2d 1042, 1062 (3d Cir. 1991) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989)).  *Monell v. Department of Social Servs. of the City of New York*, 436 U.S. 658, 690-95 (1978).

Absent a constitutional violation in the first instance – of which there was none here – the derivative issue of a deficient custom, practice or policy is irrelevant.  *See, Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Collins v. City of Harker Heights,* 503 U.S. 115, 123 (1992) (holding that a city may be liable for a policy or custom of failing to train its employees only "if a city employee violates another's constitutional rights."); and *Estate of Smith v. Marasco,* 318 F.3d 497 (3d Cir. 2003) ("[T]he initial question in a section 1983 action is 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'").

### 1.  **Plaintiff's State Created Danger Claim Fails As A Matter Of Law**

Plaintiff's threshold constitutional violation claim is still an alleged "state-created danger" claim asserted under the 14th Amendment. The doctrine of state-created danger traces its origins to specific language in the Supreme Court's opinion in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989).  *Johnson v. City of Phila.*, 975 F.3d 394, 398 (3d Cir. 2020).  Specifically, the Court in *DeShaney* set forth a course of reasoning that only in limited circumstances does the Constitution impose upon the State affirmative duties of care and protection with respect to particular individuals.  *Id.*  Drawing on the specific language cited by the Supreme Court, the "state-created danger" theory of liability was adopted in the Third Circuit in *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996).  *Id*. at 398-399.

A plaintiff must prove four elements to successfully assert a "state-created danger" theory of liability:

> [F]irst, foreseeable and fairly direct harm; **second**, action marked by "a degree of culpability that shocks the conscience"; **third**, a relationship with the state making the plaintiff a foreseeable victim, rather than a member of the public in general; and **fourth**, an affirmative use of state authority in a way that created a danger, or made others more vulnerable than had the state not acted at all.

*Johnson v. City of Phila., 975 F. 3d at 400* (*citing, Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018) (Bold added).  In applying these four elements to the present claim, it is clear that two (2) of the four (4) elements simply do not apply – element (2) – conscience-shocking conduct by the deputy defendants, and element (4) – an *affirmative* act that increased the danger to Plaintiff.

This Court, the late Honorable Edmund V. Ludwig, has previously addressed the applicability of the state-created danger theory of liability in a slip and fall case quite similar to

the present case.  Namely, in *Casey Nolt v. Borough of West Chester, et. al*; 2:06-cv-1292.[1]  The Court granted summary judgment in favor of defendants, addressing a series of alleged §1983 claims against police officers who utilized handcuffs to remove Casey Nolt from her smoke-filled apartment.  During the egress from the apartment, Ms. Nolt fell down a flight of stairs while handcuffed, which caused her to sustain serious facial injuries.  Ms. Nolt subsequently brought a civil action against the officers and the municipality alleging, among other claims, a "state-created danger" / 14th Amendment claim alleging, as is alleged here, that the officers were responsible for her well-being since she was handcuffed and in their care.  In granting summary judgment in favor of the officers and municipality, the Court found no evidence of two of the essential elements of a state-created danger claim – that the fall was foreseeable and direct result of the officers' conduct (element 1), and that the officers acted with a degree of culpability that "shocks the conscience" (element 2).  *See*, *Exhibit B* at pg. 7.

As more fully discussed herein, the present claim fails for one of the same reasons as in *Nolt* – the actions of the officers cannot be considered "conscience-shocking."  Additionally, while the officers in *Nolt* who were alleged to have taken an *affirmative* act, thus meeting element 4, by escorting Nolt and (according to her) pushing her down the steps, the allegations here are that the officers *failed* to do a variety of things such that the fourth element cannot be met, as there was not an affirmative act.

### a.  *There Was Not An Affirmative Act*

Plaintiff's allegation of alleged wrongdoing as set forth in paragraph 29 and 40 of his Amended Complaint and its subparts is a *failure* of "John Doe 1" and Deputy Greenawalt to do various things.  *See*, ECF Doc. No. 8.  This deficiency is on full display as all of the allegations

---

[1] A copy of the unpublished opinion is attached hereto as "*Exhibit B*."

(subparts a – k) contained in Paragraph 40, explicitly begin with the word "failing."  *Id.* at ¶ 40.

These are not affirmative acts – to the contrary – they are alleged failure to do something to

eliminate danger.  This "failure" is opposite of what is needed to establish this element of the

state-created-danger theory – an affirmative act.  With regard to the fourth element of a state

created danger claim, an affirmative act, as opposed on an omission or inaction, is required.

Specifically,

> [l]iability . . . is predicated upon the states' *affirmative acts* which work to
> the plaintiff's detriment in terms of exposure to danger."  "It is the *misuse
> of state authority, rather than a failure to use it*, that can violate the Due
> Process Clause. . . .  The line between action and inaction may not always
> be clear. However, we have never found a state-created danger claim to be
> meritorious without an allegation and subsequent showing that state
> authority was affirmatively exercised in some fashion.

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235-36 (3d Cir. 2008) (internal citations omitted)

(finding the actions pled were "omissions, not commissions -- inactions rather than actions.").

Plaintiff is attempting to characterize an act of omission – the failure of Deputy "John

Doe 1" defendant and/or Deputy Greenawalt to offer assistance during his egress from the van –

or the request by the deputy defendants that Plaintiff exit the van as an affirmative act.  *See*, ECF

Doc. No. 8 at ¶¶ 17, 21, 22.  This characterization is insufficient.  *See*, *Perez ex rel. Estate of

Perez v. City of Philadelphia*, 701 F. Supp. 2d 658, 668 (E.D. Pa. 2010) ("[A]ssurances by a

[state actor], which induce a person to voluntarily limit her freedom, [do not] establish an

affirmative act.").  Further, "[M]erely restating inaction as an affirmative failure to act does not

alter the passive nature of the alleged conduct."  *Knellinger v. York St. Prop. Dev., LP*, 57 F.

Supp. 3d 462, 470-71 (E.D. Pa. 2014).  "Failing to take appropriate action is precisely the type of

inaction that does not satisfy the fourth prong of the test." *Id.  See also*, *Bright v. Westmoreland

County*, 443 F.3d 276, 282 (3rd Cir. 2006) ("It is important to stress… that under the fourth

element of a state-created danger claim, liability under the state-created danger theory is predicated upon the states' *affirmative acts* which work to the plaintiffs' detriments in terms of exposure to danger.") (emphasis in original); *Schweiter v. Twp. of Radnor*, 2018 U.S. Dist. LEXIS 5734, *18-21 (E.D. Pa. Jan. 12, 2018) (MJ Heffley) (granting defendants' motion to dismiss holding that plaintiffs failed to satisfy the fourth prong of the state-created danger test where defendant's decision not to implement recommended improvements to the stormwater system in which plaintiff almost drowned and suffered serious injury, constituted omissions, not commissions or an affirmative act).

Plaintiff has thus failed to satisfy the fourth prong of the state-created-danger test. *Philips*, 515 F.3d at 236; *See also*, *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 435 (3d Cir. 2006) (plaintiff's allegations related to defendants' failure to take certain affirmative acts to increase safety standards at [a] jail "are insufficient to trigger substantive due process liability").  As was fatal to plaintiffs' claims in *Nolt* and *Schweiter*, two cases decided by This Court, so too is Plaintiff's failure to allege an affirmative act that was the "but for cause" of the alleged risks he faced, and which resulted in his alleged injuries.  Absent such evidence of an affirmative act on the part of a state actor, element four of the state-created danger doctrine cannot be met, and Plaintiff's claim fails as a matter of law.

### b.   *The Conduct Was Not "Conscience Shocking"*

"[I]n *any* state-created danger case, the state actor's behavior must always shock the conscience . . . [and] what is required to meet the conscience-shocking level will depend upon the circumstances of each case, particularly the extent to which deliberation is possible.  *Phillips*, 515 F.3d at n.6. (emphasis in original) (finding deliberate indifference where "defendants not only foresaw the danger of harm their actions presented, but were deliberately indifferent in

providing . . . more . . . information").  Furthermore, of the standards that apply "[e]xcept in those cases involving either true split-second decisions or, on the other end of the spectrum, those in which officials have the luxury of relaxed deliberation, an official's conduct may create state-created danger liability if it exhibits *a level of gross negligence or arbitrariness that shocks the conscience*." *Estate of Smith v. Marasco*, 318 F.3d 497, 509 (3d Cir. 2003) (emphasis added).

The Third Circuit has recognized that the level of culpability required to meet the "shocks the conscience" standard depends upon the circumstances facing the state actor and the time within which the actor has to deliberate upon his or her actions, and that there "is no calibrated yard stick," to determine the metric, as "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another." *Kaucher*, 455 F.3d at 426 (*quoting*, *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)).

The Third Circuit has been steadfast in acknowledging that simply "negligent behavior can never rise to the level of conscience shocking." *Kaucher*, 455 F.3d at 426; *See*, *Lewis* 523 U.S. at 849 ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").  The Third Circuit has more recently expounded on the contours of the "shocks the conscience" standard, explaining that "the required culpability must be somewhere within the bounds of gross negligence, at a minimum, and gross recklessness, at a maximum." *Ye v. United States*, 484 F.3d 634, 639 (3d Cir. 2007); *See also*, *Schweiter v. Twp. of Radnor*, 2018 U.S. Dist. LEXIS 5734, *18-21 (E.D. Pa. Jan. 12, 2018) (MJ Heffley) (granting defendants' motion to dismiss holding that plaintiffs failed to satisfy the second prong of the state-created danger test, where defendant decided not to implement recommended improvements to the stormwater system in which plaintiff almost drowned and suffered serious

11

injury, as the decision not to implement the recommended safety measures did not rise to the

level of "conscience shocking" behavior); and *Nolt* (failing to safely assist a handcuffed detainee

such that she fell down a flight of stairs is not "conscience-shocking").

Here, Plaintiff alleges that he requested assistance in getting out of the transport van, and

that the deputy defendants did not help him down.  Plaintiff's Amended Complaint contains

more allegations than the initial Complaint of factual narrative regarding knowledge on the part

of the deputy defendants of his requests; however the Amended Complaint is still devoid of any

facts which indicate the deputies would be aware of other inmates having issues getting out of

the van while in restraints, nor any actual indications that Plaintiff himself had prior issues with

stepping out of a transport vehicle.  In fact, the video surveillance of the incident still stands in

stark contrast to Plaintiff's rendition of events, with the entire ordeal of the van doors being

opened to Plaintiff falling occurring in less than fifteen (15) seconds, and Plaintiff not near

anyone to protest egressing from the van without assistance, nor defendants willingly ignoring a

foreseeable danger or risk.  *See*, *Morse v. Lower Merion Sch. Dist.*, 132 F. 3d 902, 910 (3d Cir.

1997).

Likewise, the two inmates who preceded Plaintiff, and who were also handcuffed and

shackled, had no difficulty alighting safely from the van, thus not indicating to the deputies that a

grave danger or risk existed which they consciously ignored and disregarded.

While Plaintiff now alleges in his Amended Complaint that he raised the issue of

potentially having difficulty exiting the van prior to anything captured on the surveillance

footage, this does not negate the fact that immediately upon seeing the doors open, Plaintiff took

it upon himself to attempt to exit the vehicle, and that he did not sit patiently, requesting

assistance in the moment when the time actually came for him to exit the van.  Further, as

compared to *Nolt*, in which the alleged conduct was far more egregious than here – allegedly
<u>pushing</u> a handcuffed and intoxicated arrestee down a flight of stairs (or at least not being more
protective of her) – the alleged conduct here in failing to escort Plaintiff down the stairs is far
less troublesome.  If the conduct in *Nolt* was not, as a matter of law, "conscience shocking," then
the conduct here certainly cannot be.

Where, as here, Plaintiff has failed to illustrate that the deputy defendants were aware of
and "consciously disregard[ed] a substantial risk of serious harm," Plaintiff fails to establish that
the deputy defendants' conduct was even negligent, let alone shocks the conscience.  *Kaucher*,
455 F.3d at 427 (*see also*, *Ziccardi v. City of Phila.*, 288 F.3d at 66).  As a result, Plaintiff fails to
establish the requisite second prong of the state-created danger test, and his claims under such a
theory of liability fail as a matter of law.

### 2.   The Derivative *Monell* Claim Fails As A Matter Of Law

As discussed above, absent a constitutional violation, Plaintiff's *Monell* claim fails, as
proof of a violation is the first and seminal element.  *Supra*. p. 6.  Additionally, the second and
third derivative elements needed for Plaintiff's *Monell* claim – (2) a constitutionally deficient
policy or practice (3) which caused the underlying violation, are likewise not met here.

A municipal policy is a "statement, ordinance, regulation, or decision officially adopted
and promulgated by [a local governing] body's officers." *City of Canton v. Harris*, 489 U.S. 378,
385 (1989).  A custom is "an act 'that has not been formally approved by an appropriate-
decision maker,' but is 'so widespread as to have the force of law.'" *Natale v. Camden Cnty.*
*Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (*quoting*, *Bd. of the Cty. Comm'rs of Bryan Cty.*
*v. Brown*, 520 U.S. 397, 404 (1997).  A plaintiff must show "a direct causal link between the
municipal policy or custom and the alleged constitutional deprivation." *Id*. at 385.

13

To establish deliberate indifference, a plaintiff must be proof of "a pattern of underlying constitutional violations." *Carswell v. Borough of Homestead*, 381 F.3d 235, 234 (3d Cir. 2004). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011)(*quoting, Brown*, 520 U.S. at 409). More specifically, a plaintiff must set forth "a **pattern** of prior incidents or knowledge of **similar** violations of constitutional rights and **failed to take adequate measures** to ensure the particular right in question.'" *Cacciatore v. City of Phila*., 2005 U.S. Dist. LEXIS 19064, *1, *6 (E.D. Pa. Sept. 1, 2005) (*quoting, Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001)) (emphasis added).

The gist of Plaintiff's *Monell* claim against Moving Defendants is that because they allegedly lacked appropriate policies and training with regard to the ingress and egress of inmates from Northampton County Sheriff's Office vehicles, their deputies engaged in practices in violation of Plaintiff's constitutional rights. The allegations in the Amended Complaint are no more than conclusory allegations and allege no specific instances on which this Court can rely to suggest that Moving Defendants had knowledge that its policies and training posed any risk to individuals or their constitutional rights. Plaintiff explicitly states that "Defendants… had no policy or guidelines… or other structured procedure used or applied to situations similar to Plaintiff's prior to the date of Plaintiff's injury." *See*, ECF Doc. No. 8 at ¶ 34. However the Amended Complaint contains no allegations of a pattern of similar violations as those alleged against the "John Doe" deputy and Deputy Greenawalt, beyond blindly asserting that the Defendants were aware of the need for additional training and policies. *Id*. at ¶ 38. It is obvious from Plaintiff's failure to add such elaboration in his attempt to cure his original Complaint's

14

deficiencies, that Plaintiff can point to no facts or evidence to substantiate the is unsupported

allegation, which amounts to nothing more than a recitation of the requisite element of the claim,

not the provision of any actual facts on the subject.  Likewise, the Amended Complaint puts forth

no facts which would make it "patently obvious" that as a result of allegedly failing to train

officers or implement appropriate policies, that policymakers "knew to a moral certainty" that a

scenario such as what is alleged to have occurred with regard to Plaintiff would follow.  Finally,

the allegations in the Amended Complaint appear to rely on the theory that "better" or

"additional" training or policies would have reduced the overall risk, which as stated in *Thomas*,

is insufficient to establish liability.

### B.  Plaintiff's State Law Claims Fail As A Matter of Law

Plaintiff's Count III asserts state law claims of "Negligence, Carelessness, and

Recklessness" against "all Defendants," including Moving Defendants.  Plaintiff's Count IV

asserts state law claims for various "intentional" conduct, including assault, battery, and

intentional infliction of emotional distress against "all Defendants," including Moving

Defendants.  Plaintiff has offered no additional facts in his Amended Complaint which support

these claims under the law of the Eastern District of Pennsylvania, and Moving Defendants'

argument with regard to the legal insufficiency of these claims, now in the Amended Complaint,

remains steadfast.

In Pennsylvania, public entities, such as the County Defendants, are immune from tort

liability, except under limited circumstances.  *Johnson v. City of Phila.*, 975 F.3d at 404 (*citing*,

*Brewington ex rel. Brewington v. City of Phila.*, 650 Pa. 139 (Pa. 2018); *see also*, 42 Pa.C.S. §

8541.  More specifically, the Tort Claims Act grants immunity to municipalities and local

agencies, such as the County, and its employees from claims based in negligence for monetary

damages except with respect to nine (9) specific types of tortious conduct, which are to be narrowly construed.  42 Pa. C.S.A. § 8541 *et seq.*; *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 600 (3d Cir. 1998); *See, Lindstrom v. City of Corry*, 763 A.2d 394 (Pa. 2000).  Of the nine (9) exceptions, the only one that could conceivably apply here is the "vehicle liability" exception set forth in 42 Pa.C.S. § 8542(b)(1).[2]  Applying the only conceivable exclusion – "vehicle liability" to the facts of the present case, it is clear that it does not apply to the County Defendants, or the deputy defendants.

Additionally, the Tort Claims Act "expressly bars recovery against a municipality for intentional torts…" such as those plead in Count IV.  *Holmes v. City of Philadelphia,* 2005 U.S. Dist. LEXIS 16116, *9 (E.D. Pa. Aug. 4, 2005)(quoting 42 Pa. C.S. §  8542(a)(2); *see also Lakits v. York*, 258 F. Supp. 2d 401, 407 (E.D. Pa. 2003)(the Tort Claims Act does not waive immunity for intentional torts).

While Plaintiff's alleged injuries occurred during his egress from a Northampton County Sheriff's Department transport van, the specific imposition of vehicle liability requires, "the **operation** of any motor vehicle in the possession or control of the local agency…"  42 Pa. C.S. § 8542(b)(1) (emphasis added).

Early Pennsylvania law established that liability could only be attached to a municipality under the vehicle exception where a plaintiff's injuries are sustained as the result of the negligent operation of a vehicle by an employee of a local government agency.  *Capuzzi v. Heller*, 125 Pa. Cmwlth. 678, 684 (1989).  Thus, the vehicle exception to governmental immunity applies "only

---

[2] The nine (9) enumerated exceptions are for: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody or control of animals; and (9) sexual abuse.  42 Pa. C.S. § 8542

to situations where an employee of a local agency actually operates the vehicle in question." *Burkey by Burkey v. Borough of Auburn*, 100 Pa. Cmwlth. 110, 113 (1986).  Further, in *Gale v. City of Philadelphia*, 86 A.3d 318, 322 (Pa. Commw. Ct.) appeal denied, 99 A.3d-927 (Pa. 2014), the Commonwealth Court held that "the language of the statute and our cases make clear… that where an employee of a local agency has not acted by putting a vehicle in motion, liability under the vehicle exception to governmental immunity will not attach."

"Until recently, Pennsylvania law interpreted the operation of a vehicle rather narrowly to only include the moving or driving of the vehicle."  *Hernandez v. Independence Tree Serv. LLC,* 2019 U.S. Dist. LEXIS 68185 at *5 (E.D. Pa. Apr. 22, 2019) (*citing*, *Love v. City of Philadelphia*, 518 Pa. 370 (Pa. 1988) (holding that a vehicle "can only be operating . . . if he actually puts it in motion or drives it.")).  "However, the Pennsylvania Supreme Court later expanded the definition of "operation" to reflect the "continuum of activity" and various "decision-making process[es] necessary to move the vehicle."  *Id.* (*citing*, *Balentine v. Chester Water Auth.*, 648 Pa. 105, 122 (Pa. 2018)).  The Court adopted a new definition for "operation of a vehicle," which entails "a series of decisions of where and whether to park, where and whether to turn, whether to engage brake lights, whether to use appropriate signals, whether to turn lights on or off, and the like, are all part of the 'operation' of a vehicle."  *Balentine v. Chester Water Auth.*, 648 Pa. 105, 123 (2018).  As such, while the new interpretation of "operation" under the exception now explicitly embraces "more than simply *moving* the vehicle," it does not extend the exception to alighting from a vehicle as here.

In short, the averments of Plaintiff's Amended Complaint with regard to the state law claims in Count III for negligent conduct, and Count IV for intentional conduct do not fall within the vehicle liability exception to immunity or any other exception, and remain virtually

17

unchanged from the initial allegations in the original Complaint.  Plaintiff had an opportunity to attempt to remedy these issues, by pleading more facts which may arguably be construed to survive a motion to dismiss, but has failed to do so.  As a result, Plaintiff's Count III and Count IV fail to state a claim upon which relief can be granted, and must be dismissed.

V.     **CONCLUSION**

For the reasons set forth above, Moving Defendants, respectfully request This Honorable Court dismiss Plaintiff's Amended Complaint against Moving Defendants for failure to state a claim upon which relief can be granted.

Respectfully submitted,

**MacMAIN, CONNELL & LEINHAUSER, LLC**

Dated: <u>June 2, 2021</u>          By:     */s/ David J. MacMain*
                                         David J. MacMain, Esquire
                                         Andrew J. Davis, Esquire
                                         Attorney I.D. Nos. 59320/316460
                                         433 W. Market Street, Suite 200
                                         West Chester, PA 19382
                                         *Attorneys for Defendants Northampton*
                                         *County Sheriff's Office and Northampton*
                                         *County*

## **CERTIFICATE OF SERVICE**

I, David J. MacMain, Esquire, hereby certify that on this 2nd day of June 2021, a copy of the foregoing *Defendants' Motion to Dismiss Plaintiff's Amended Complaint* was served upon the following via ECF Notification:

James D. Famiglio
Law Offices of James D. Famiglio, PC
811 N. Providence Road
Media, PA 19063
*Attorney for Plaintiff*

Gerard J. Geiger, Esquire
Newman Williams
712 Monroe Street
P.O. Box 511
Stroudsburg, PA 18360-0511
*Attorney for Deputy Sheriff Greenwalt*

**MacMAIN, CONNELL &
LEINHAUSER, LLC**

By:     */s/ David J. MacMain*
            David J. MacMain, Esquire
            Attorney I.D. No. 59320
            433 West Market Street, Suite 200
            West Chester, Pennsylvania 19382
            *Attorneys for Defendants Northampton
            County Sheriff's Office and Northampton
            County*

# EXHIBIT A

# EXHIBIT A

# INCIDENT VIDEOS

# (SENT VIA FEDERAL EXPRESS TO THE CLERK OF COURT AND PLAINTIFF'S ATTORNEY ON MAY 4, 2021)

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CASEY NOLT                          :        CIVIL ACTION
                                    :
        v.                          :
                                    :        No. 06-1292
BOROUGH OF WEST CHESTER, et al.     :

**<u>MEMORANDUM</u>**

Ludwig, J                                              March 24, 2008

In this civil rights action, 42 U.S.C. § 1983, defendants[1] move for summary judgment,

Fed. R. Civ. P. 56.[2] The complaint asserts defendants used excessive force in handcuffing

plaintiff Casey Nolt to remove her from her smoke-filled apartment. Defendants are alleged

to have allowed her to fall head-first down a flight of stairs and, as a consequence, she

sustained serious facial injuries. The complaint sets forth claims for false arrest; false

imprisonment; excessive force; state-created danger; and municipal violations. Upon careful

---

[1] Defendants are Corporal Pam Baumann, Patrolman David Hammond, the Borough of West Chester and the West Chester Police Department. Judgment will be entered against plaintiff on all claims asserted against the police department, because, "[i]n Section 1983 actions, police departments cannot be sued in conjunction with municipalities because the police department is merely and administrative arm of the local municipality and not a separate judicial entity." <u>Padilla v. Township of Cherry Hill</u>, 110 Fed. Appx. 272, 278 (3d Cir. 2004) (citations omitted).

[2] "Summary judgment should be granted only 'if the pleadings, depositions, answers to interrogatories, and admissions on filed, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(c). In making this determination, we 'must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.' " <u>Norfolk Sothern Ry. v. Basell USA, Inc.</u>, 512 F.3d 86, 91 (3d Cir. 2008), quoting <u>Abramson v. William Patterson College of New Jersey</u>, 260 F.3d 265, 276 (3d Cir. 2001).

consideration, summary judgment will be granted for defendants.

The evidentiary matters under Rule 56,[3] viewed most favorably to plaintiff, are as follows:

On Saturday, November 20, 2004 at approximately 1 a.m., defendant Baumann was approached by a man who reported that an apartment in his building was on fire. Baumann N.T. 11, Report. Baumann, Hammond and Patrolman Albert McCarthy[4] arrived at the apartment, saw and smelled smoke, and heard a smoke detector and a barking dog. Baumann N.T. 12-15; Hammond N.T. 33-34; Report. Baumann sought to wake plaintiff, who was unconscious on a couch. Baumann N.T. 16, 18-19. Initially unsuccessful, and cognizant of the danger of a fire, Baumann continued to try to awaken plaintiff. When plaintiff was aroused, she attempted to strike Baumann. Baumann N.T. 23-24, 38-39, 41, 42; Hammond N.T. 37, 47-48; Report. She refused to leave the apartment. Baumann and Hammond handcuffed her behind her back.[5] Baumann N.T. 28; Hammond N.T. 47-48; Report.

---

[3] The record on summary judgment consists of deposition transcripts of plaintiff and the officers involved in the incident and the Chief of Police of the Borough of West Chester, a copy of the Incident Investigation Report ("Report"), and excerpts from the West Chester Police Procedure Manual.

[4] McCarthy is not a defendant. McCarthy, an experienced and nationally certified firefighter and captain of the local West Chester fire company, was not involved with efforts to lead plaintiff from her apartment. He concentrated on locating the source of the smoke and clearing it from the apartment. McCarthy N.T. 40-41, 43-45, 77-78

[5] The Police Procedures Manual specifies that "The method of handcuffing person(s) in custody will be hands cuffed behind the back, palms outward, with the handcuffs double locked." This method is applicable to "all persons arrested who are to be transported in a police vehicle, charged with a serious crime, is violent, is a danger to himself or others . . ." Manual, ¶¶ II. A. & B. Officers Baumann and Hammond testified that they were aware of these procedures, and

Hammond's testimony is that he used the force necessary to pull plaintiff's hands behind her back because she refused to put them there voluntarily.  Hammond N.T. 48; Report.  Both officers explained that they believed handcuffing was necessary so as to remove plaintiff from the dangerous situation.[6]  Plaintiff was uncooperative, and had already tried to strike the officers  and might do so again. Baumann N.T. 28, 41-42; Hammond N.T. 56-58, 77.

Once handcuffed, plaintiff became more compliant and the officers proceeded to lead her out of the apartment.  With Hammond walking behind plaintiff[7] and holding the handcuffs, plaintiff was able to leave her apartment and walk down one flight of stairs without difficulty. Baumann N.T. 44, 55, 65-66; Hammond N.T. 54-55, 74-76; Report.  On the second landing, however, plaintiff pulled away from Hammond, who lost his hold on the handcuffs.  Plaintiff fell down the stairs, striking her head on the lower landing.  Baumann N.T. 57-58; Hammond N.T. 64; Report.   Shortly thereafter, the fire department and paramedics arrived and began to treat plaintiff's injuries.  She was transferred to Crozer-

---

acted in accordance with them.  Baumann N.T. 31; Hammond N.T. 49-50.  Additionally, Officer Hammond testified that he received training and instruction from the police academy regarding how and when to handcuff an individual.  Hammond N.T. 76-77,

[6] Both officers also testified that they had not been instructed that it is unlawful to handcuff an individual in order to remove them from a dangerous situation.  Baumann N.T. 67-68; Hammond N.T. 77-79.  See Gruver v. Borough of Carlisle, Civ A. No. 05-1206, at 10 (M.D. Pa., filed May 19, 2006) (handcuffing and tasering individual suffering hypoglycemic attack did not constitute excessive force when done after individual appeared disoriented, struggled against officers, and appeared to be walking into oncoming traffic).

[7] Hammond testified that he was trained to walk behind individuals in handcuffs, particularly where the individual posed a threat to the officer.  He believed that plaintiff might attempt to strike him again..  Hammond N.T. 60-61, 65-66.

Chester Hospital where she received further treatment.  Report.

Plaintiff testified she does not remember the incident - her last memory before waking

in the hospital was putting a pot of noodles on the stove.  Nolt N.T. 19-21.  She does not

know whether the apartment was filled with smoke, does not recall being handcuffed or how

she came to fall down the steps.  Id. at 30, 44-45, 104-05.

The issue at this stage is whether defendants' alleged conduct could amount to more

than negligence.  "A prima facie case under § 1983 requires a plaintiff to demonstrate: (1)

a person deprived him of a federal right; and (2) the person who deprived him of that right

acted under color of state or territorial law." Groman v. Township of Malapan, 47 F.3d 628,

632 (3d Cir. 1995) (citations omitted).  "The Due Process Clause of the Fourteenth

Amendment is not implicated by the lack of due care of an official causing unintended injury

to life, liberty, or property.  In other words, where a government official is merely negligent

in causing the injury, no procedure for compensation is constitutionally required." Daniels

v. Williams, 474 U.S. 327, 333 (1986)(injury resulting from pillow case negligently left on

prison stairs by correctional officer was not actionable under § 1983); Davidson v. Cannon,

474 U.S. 344, 347-48 (1986) (injury resulting from attack by inmate not actionable because

failure to protect was not "the sort of abusive conduct that the Due Process Clause was

designed to prevent.").

Here, the Rule 56 record evinces that the officers followed standard police procedures

and tried to protect, not injure, plaintiff.  She was not pushed down the stairs.  The

4

uncontroverted testimony of the officers is that she fell when she pulled away from Officer

Hammond. Plaintiff says the circumstances were not as dangerous as those depicted by the

officers, who improperly tried to lead a disoriented individual down a series of stairs, and

they should have walked in front of her so as to avoid or break a possible fall.[8]   She

maintains their conduct rises to a constitutional violation. She admits not recalling the events

leading up to her fall or how she fell. She offers no matters to show more than mere

negligence, not the kind of abusive conduct contemplated by § 1983. As a result, plaintiff's

constitutional claims against Officers Baumann and Hammond must be dismissed, and

judgment must be granted in their favor.

Plaintiff's individual claims must also be rejected for lack of evidence:

Count I and II - false arrest and imprisonment. It does not appear plaintiff was

arrested. She was taken into custody for her protection and to protect the officers during

their efforts to remove her from the apartment. She was handcuffed and led out of the

apartment using the procedures set forth in the municipality's Procedure Manual. See also

Simmons v. Philadelphia, 947 F.2d 1042, 1049 (3d Cir. 1991) ("pursuant to a departmental

directive, the City police ordinarily do not file charges against intoxicated persons, but

merely hold them in protective custody until they are sober or can be released to a responsible

---

[8] According to plaintiff, the officers had an absolute duty to protect her. Memorandum at
8. This is not the correct legal standard. See DeShaney v. Winnebago Cty. Dep't. Of Soc. Serv.,
489 U.S. 189, 200 (1989) ("[W]hen the State takes a person into its custody and holds him there
against his will, the Constitution imposes upon it a corresponding duty to assume some
responsibility for his safety and general well-being.")

party."). Given the circumstances, even if there had been an arrest, its purpose was to protect plaintiff and the officers and, as such, would have been lawful. See, e.g., Gruvey v. Carlisle, Civ. A. No. 05-1206 (M.D. Pa., filed May 19, 2006). Because plaintiff's false arrest claim does not succeed, it follows as a matter of law that her false imprisonment claim is also unsupportable. Lynn v. Christner, 184 Fed. Appx. 180, 184 (3d Cir. 2006), citing Groman, 47 F.3d at 636.

Count III - excessive force. Officer Hammond admits to using force to handcuff plaintiff, which plaintiff contends, even the handcuffing by itself, was excessive. However, force is not excessive where the officers' actions were objectively reasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). Determinative factors include the need and the amount of force used, the injury inflicted, the threat perceived by the officers, and whether the force was applied in good faith. Id. at 396. Here, the record shows the apartment was smoke-filled and there was a need to leave for the safety of both plaintiff and the officers. Plaintiff was combative and resistant to leaving. Officer Hammond's unrefuted testimony is that he used only whatever force was necessary. Plaintiff does not assert having been injured by the handcuffing, only by the fall. Nolt N.T. 30, 44-45, 104-05. See Gilles v. Davis, 427 F.3d 197, 208 (3d Cir. 2005) (evidence of excessive force related to handcuffing was insufficient where plaintiff did not seek or receive medical treatment for injuries related the to the handcuffing).

Count IV - state-created danger.  Plaintiff offers no evidence of two of the essential elements of a state-created danger - that her fall was a foreseeable and direct result of the officers' conduct, and that the officers acted with a "degree of culpability that shocks the conscience."[9] According to the evidence, plaintiff's fall occurred when she pulled away from Hammond.  She had already safely walked down one flight of stairs.

Moreover, there is nothing to prove that the conduct of the officers "shocks the conscience."  The conduct of the officers was, at most, negligent.  As a matter of law, "negligent behavior can never rise to the level of conscience shocking."  Kaucher v. County of Bucks, 455 F.3d 418, 426 (3d Cir. 2006).  "The required culpability must be somewhere within the bounds of gross negligence, at a minimum, and gross recklessness, at a maximum."  Ye v. United States, 484 F.3d 634, 639 (3d Cir. 2007).  Plaintiff's state-created danger claim is deficient.

---

[9] Bright v. Westmoreland Cty., 443 F.3d 276, 281 (3d Cir. 2006).  The other elements are that the relationship between plaintiff and defendant was such that plaintiff was a foreseeable victim of the defendant's acts, and that a state actor affirmatively used his or her authority in a way that created a danger to the citizen or rendered the citizen more vulnerable to danger than had the state not acted at all.  Here, it is unnecessary to consider these factors.

7

Count V - municipal violations.   Because there is no constitutional violation, a necessary element of <u>Monell</u>,[10] defendants are entitled to judgment on this claim.

BY THE COURT:


<u>/s/ Edmund V. Ludwig</u>
Edmund V. Ludwig, J.

---

[10] The elements of a <u>Monell</u> claim are (1) the deprivation of a Constitutional right; (2) that action was taken pursuant to a custom or policy of the local government unit; and (3) that such action was the cause of the deprivation.   <u>Monell v. Department of Soc. Serv.</u>, 436 U.S. 658, 691 (1978).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CASEY NOLT                                    :        CIVIL ACTION
                                              :
        v.                                    :
                                              :        No. 06-1292
BOROUGH OF WEST CHESTER, et al.               :

## **ORDER**

AND NOW, this    24th    day of March, 2008, "Defendants' Motion for Summary

Judgment" (docket no. 23) is granted, and judgment is entered in favor of defendants and

against plaintiff.  A memorandum accompanies this order.


BY THE COURT:


/s/ Edmund V. Ludwig
Edmund V. Ludwig, J.